IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| MICHAEL J. NASSER,<br><br>Plaintiff,<br><br>v.<br><br>MS. LAUREN W. WALLER, ESQUIRE, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 5:16-cv-00032<br><br>By: Elizabeth K. Dillon<br>United States District Judge |

**MEMORANDUM OPINION**

In this lawsuit, plaintiff Michael J. Nasser, proceeding *pro se*, alleges that the defendants' actions during the course of a state court lawsuit litigated in the Circuit Court of Frederick County, Virginia (the State Lawsuit), violated his federal right to due process. The defendants in the instant case are: (1) the opposing party in the State Lawsuit, Neustar Localeze, formerly known as Amacai Information Corporation (Neustar); (2) Neustar's counsel, Lauren W. Waller; and (3) the circuit court judge that presided over the latter portion of the State Lawsuit, the Honorable Randolph Bryant. Nasser's complaint before this court contains eighteen counts, and nearly all of them are titled as violations of the rules of professional conduct or violations of the canons of judicial conduct. But he also references 42 U.S.C. § 1983, and his overarching claim appears to be that the defendants conspired to deny him due process.

There are four motions pending before the court and addressed herein. Neustar and Waller jointly filed both a motion to dismiss and a motion for summary judgment (Dkt. Nos. 7, 27). Judge Bryant has filed a separate motion to dismiss (Dkt. No. 12), and Nasser has filed his own motion for summary judgment (Dkt. No. 19). The motions have been fully briefed and were argued before the court. As discussed in more detail below, the court concludes that, in

large part, Mr. Nasser's claims are based on a fundamental misunderstanding of the meaning and significance of one of the state court's orders. His claims fail as a matter of law, both because they are premised on this mistaken understanding and for additional reasons, as well. For these reasons, the court will grant the defendants' motions to dismiss and will deny both motions for summary judgment as moot.

## I. BACKGROUND

### A. The State Lawsuit

In July 2014, Nasser filed the State Lawsuit against Neustar, asserting claims of negligent and intentional infliction of emotional distress and a nuisance claim. All of the claims were based on Nasser's allegation that Neustar published on the internet Nasser's address and phone number, incorrectly identifying them as contact information for Comcast. According to Nasser, Neustar was served with the state lawsuit on November 14, 2014. (Pl.'s Resp. to Waller's & Neustar's Mot. for Summ. J. 1 & n.1, Dkt. No. 31.) Neustar was represented by Waller in that suit, and the Honorable Clifford Athey, Jr. was the original judge assigned to the case.

In response to Nasser's state court complaint, Neustar filed a demurrer. After a hearing, Judge Athey sustained the demurrer as to both emotional distress claims and overruled it as to the nuisance claim in Count III, thereby allowing that claim to go forward. He entered a written order to that effect dated March 6, 2015. (Demurrer Order, Dkt. No. 1-7.)[1] The three-page

[1] The parties appear to agree that the state court records and proceedings speak for themselves and allow resolution of this case, and neither party objects to the court's review of documents and transcripts from the State Lawsuit. Many of those documents are attached to either Nasser's complaint, incorporated by reference, or are attached to his response to defendants' motions to dismiss. Thus, the court properly considers the documents from the State Lawsuit in ruling on the motions to dismiss. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (explaining that, when ruling on a motion to dismiss, a court may consider documents that were "integral to and explicitly relied on in the complaint," if there is no challenge to authenticity) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)); *Witthohn v. Fed. Ins. Co.,* 164 F. App'x 395, 396 (4th Cir. 2006) (holding district court properly considered court records and noting that "a court may consider official

(continued on next page)

Demurrer Order is titled simply as "Order" and contains a section titled "Statement of Material Facts," another section titled "Conclusions of Law," and a third titled "Decision." (*Id.*) The order is clear that the court was ruling on a demurrer and that it was overruling it only as to the nuisance claim. In particular, the court stated that "[f]urther evidence is required by the fact finder to determine whether the acts complained of may have constituted a private nuisance." (*Id.* at 3.) In the final paragraph of the order, Judge Athey directed the clerk "to send a copy of this Final Order to counsel of record, and the Plaintiff . . . ." (*Id.*) Nasser points repeatedly to the fact that the court used the language "Final Order" in that sentence and contends that it means that the order was a final order that concluded the case. By focusing on this language, however, Nasser misunderstands the nature of a ruling on a demurrer and also ignores the fact that the order nowhere says it is a judgment being entered in Nasser's favor or that it is otherwise disposing of the case.

As the Supreme Court of Virginia has explained, "[a] final order is one which disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order." *Daniels v. Truck & Equip. Corp.*, 139 S.E.2d 31, 35 (Va. 1964) (citations omitted). The Demurrer Order, however, noted only that the demurrer was denied as to the nuisance claim and even included statements in its analysis stating that further proceedings were needed, such as, "Further evidence is required by the fact finder to determine

---

(continued from previous page)

public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed").

whether the acts complained of may have constituted a private nuisance." (Demurrer Order 3.) Thus, it is plain that the order did not dispose of the whole case.

Furthermore, the mere fact that Judge Athey used the term "final order" in his direction to the clerk to provide copies, did not transform the order into a final, appealable order such that the circuit court would be deprived of jurisdiction after twenty-one days had passed, as Nasser contends. Virginia courts have repeatedly noted that an order is not final if it does not dispose of the whole subject of the suit, even if it is self-described as "final." *See, e.g.*, *Andersen v. Andersen*, 2008 WL 5054702, at *2 & n.1 (Va. Ct. App. Dec. 2, 2008) (noting that "[i]t does not matter that the order declares itself to be final; it must be so in fact" and collecting Virginia authority so holding), copy attached at Dkt. No. 8-3; *Brown v. Josey*, 2011 WL 1542995, at *2–3 (Va. Ct. App. April 26, 2011), copy attached at Dkt. No. 8-4. The substance of the Demurrer Order here clearly did not grant judgment for either party and simply held that the nuisance claim was not subject to demurrer. It certainly did not dispose of the entirety of the suit such that it could be considered a "final order."

Despite this authority, Nasser has seized upon the "final order" language both in the State Lawsuit and before this court. He offers two slightly different arguments as to the significance of the order, but both flow from his premise that it was a "final order." First, he argues that judgment was entered in his favor as a result of that order. (*See* Pl's Mot. in Opp'n to Waller & Neustar's Mot. to Dismiss 5–6, Dkt. No. 20.) He contends that the court lost jurisdiction to act on any other matter in the State Lawsuit when twenty-one days had passed from the date of the

Demurrer Order, pursuant to Virginia Supreme Court Rule 1:1,[2] particularly because Neustar did not timely object to that order. (*Id.*; Pl.'s Mot. for Summ. J. 5, Dkt. No. 19.)

In his related, second argument, Nasser contends that Neustar was in default twenty-one days after entry of the Demurrer Order, and thereafter lost all entitlement to trial. Nasser relies on two Virginia Supreme Court Rules that he claims show Neustar defaulted and that the case was effectively over, and jurisdiction lost, on March 28, 2015. First, he points to Rule 3:8(b), which generally requires the defendant to file an answer within twenty-one days after the entry of an order overruling all demurrers, "or within such shorter or longer time as the court may prescribe." Here, it is undisputed that Neustar did not file an answer responding to the entire complaint within that twenty-one-day period.[3] Second, he points to Rule 3:19, which governs default. That rule states that a "defendant who fails timely to file a responsive pleading as prescribed in Rule 3:8 is in default" and that a "defendant in default is deemed to have waived any right to trial on the issues." Va. Sup. Ct. R. 3:19.

Based on these rules, Nasser argues that the State Lawsuit "was over on March 28, 2015," twenty-one days after entry of the Demurrer Order, when Neustar had not filed an answer. He posits that no trial could be had after that time because Neustar was deemed to have

[2] Rule 1:1 provides, in pertinent part: "All final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Va. Sup. Ct. R. 1:1.

[3] Nasser repeatedly notes that Neustar's demurrer did not respond specifically to the factual allegations in paragraphs 1 through 40 of Nasser's state court complaint, and thus contends that the facts in those paragraphs were undisputed for purposes of the demurrer. (Pl's Mot. in Opp'n to Waller & Neustar's Mot. to Dismiss 3, 5–6, Dkt. No. 20.) As explained *infra*, though, Neustar subsequently was permitted to file an answer out-of-time, in which it responded to all remaining allegations in the complaint.

waived it. Later in the State Lawsuit,[4] Nasser filed a motion for default judgment, contending that Neustar had failed to timely file an answer after the ruling on demurrer. But fifteen days before he filed that motion, Neustar's counsel had already tendered an answer. Also, shortly after the motion for default judgment was filed, Neustar's counsel filed a motion to expand the time for the filing of the answer. Nasser appeared and argued in opposition to that motion. But Judge Bryant granted the motion and deemed Neustar's answer timely filed, thereby curing any default. Because the late filing had been accepted—and as Judge Bryant repeatedly tried to explain to Nasser—defendant was not in default. Thus, the nuisance claim had to be tried for Nasser to be entitled to judgment in his favor. Judge Bryant also repeatedly explained to Nasser that the simple reference to a "final order" was not dispositive; instead, the substance of the order made clear that the nuisance claim remained viable and that the other two claims were dismissed. Nasser contends, though, that Judge Bryant was without jurisdiction to take any other action in the case, including allowing the late-filed answer. (Pl.'s Mot. for Summ. J. 6.) He acknowledges a Virginia circuit court judge has the discretion to grant an extension of time to file a late answer,[5] but contends that, after twenty-one days, Judge Athey's order was final, and thus that Judge Bryant had no jurisdiction to enter such an order. For the reasons already discussed, however, his assertions about the lack of jurisdiction are simply incorrect.

[4] There is a dispute about what happened after entry of the Demurrer Order in the state proceedings, but it is plain that there were motions and discovery exchanged over the course of several months. Nasser claims that he did not engage Neustar in discovery and that defendants' statement that discovery was had was false. In later hearings in the state court action, Nasser contended that he was coerced into being involved in discovery by Judge Bryant, who told him that he did not have a default judgment on the nuisance claim and would have to try it. The disputes over whether discovery was had or was coerced are immaterial to this court's analysis.

[5] He could hardly contend otherwise. Supreme Court of Virginia Rule 1:9 expressly grants the circuit court discretion to extend the time allowed for filing pleadings, even when the time fixed has already expired.

Nasser filed the complaint in this court on May 24, 2016. The following month, on June 13, 2016, Nasser's trial in the State Lawsuit took place. He did not appear for the trial, and Judge Bryant granted Neustar's motion to dismiss the case with prejudice. Judge Bryant also required that Nasser pay for the cost of the jury for the first day in the amount of $630.00. A final judgment order was entered on June 24, 2016 (Final Judgment Order, Dkt. No. 19-1, at 11–14), and Nasser had thirty days from that date to file a petition for appeal, which he did not do. He filed an objection to the final judgment, though, reiterating his same basic argument that Judge Bryant lacked jurisdiction to enter it. (Objection, Dkt. No. 19-1, at 15–17.)

**B. Nasser's Federal Complaint**

On May 24, 2016, while the State Lawsuit remained pending, Nasser filed his complaint in this case. It lists eighteen different counts, each of which asserts a violation of either a rule of professional conduct or a judicial ethical canon. The court construes his complaint liberally and notes that, although not listed as a separate count, he cites to 42 U.S.C. § 1983 and is also alleging an overarching conspiracy to deprive him of his constitutional due process rights. He contends that defendants conspired to defraud him of a judgment award, and conspired to extort money from him when Ms. Waller requested sanctions for Nasser's failure to respond to discovery and Judge Bryant "allow[ed] her to file discovery when she was in default and had not standing before the court." (Compl. ¶ 78, Dkt. No. 1.) Nasser also alleges that all actions taken by Waller, Neustar, and Judge Bryant were fraudulent and part of a conspiracy to deprive him of the $400,000 he contends he was owed as a result of the first "final order," *i.e.*, the Demurrer

Order, and the subsequent default of Neustar.[6] The court construes this as a civil conspiracy claim brought pursuant to 42 U.S.C. § 1985.

Nasser seeks monetary and injunctive relief. His complaint references different damages amounts in different places, but his final prayer for relief seeks damages in the amount of $1 million in compensatory damages and $3 million in punitive damages against all three defendants.

## II. DISCUSSION

### A. The *Rooker-Feldman* Doctrine Does Not Deprive the Court of Jurisdiction

Defendants' motions to dismiss assert numerous grounds for relief. First, in their respective motions to dismiss, defendants claim that the *Rooker-Feldman* doctrine is applicable here and thus that this court lacks jurisdiction over the lawsuit. Essentially, they claim that Nasser's lawsuit is effectively asking this court to review the decision of a state court and that this court is without jurisdiction to do so under *Rooker-Feldman*.[7] In general terms, the doctrine holds that lower federal courts do not have subject matter jurisdiction to exercise appellate jurisdiction over final state-court judgments. *Thana v. Bd. of License Comm'rs for Charles City*, 827 F.3d 314, 319 (4th Cir. 2016). Based on the Fourth Circuit's decision in *Thana* and the cases on which *Thana* relies, the court concludes that *Rooker-Feldman* does not bar this lawsuit.

As Neustar and Waller recognized might be the case in their latest filings, *Rooker-Feldman* does not apply due to the timing of the respective lawsuits here. (*See, e.g.*, Waller & Neustar's Reply Mem. Supp. Mot. Dismiss 4–5, Dkt. No. 23.) That is, defendants acknowledge that some federal courts have held, subsequent to *Exxon Mobil Corp. v. Saudi Basic Indus.*

[6] The $400,000 figure was based on his claimed damages for the nuisance claim: $100,000 in compensatory damages and $300,000 in punitive damages.

[7] *Rooker v. Fed. Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983).

*Corp.*, 544 U.S. 280 (2005), that *Rooker-Feldman* is inapplicable unless the underlying state court decision was embodied in a judgment that was final and nonappealable *prior* to the filing of the federal action challenging the state court action. (*Id.*) The state court judgment here, though, was not final and nonappealable prior to the filing of the federal action: Nasser filed this lawsuit prior to the trial in the State Lawsuit and prior to the conclusion of that case.

*Thana* was not factually the same as the instant case because it involved a suit challenging a state administrative action, but the Fourth Circuit's opinion discussed the Supreme Court's *Exxon* decision and noted the "narrow and focused" scope of the *Rooker-Feldman* doctrine. *Thana*, 827 F.3d at 319. It explained that the doctrine is "confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (citations and internal quotation marks omitted). *Thana* also made clear that the doctrine should not apply unless the plaintiff "filed suit in federal court *after the state proceedings ended*." *Id.* at 321 (quoting *Exxon*, 544 U.S. at 291) (emphasis added by *Thana*).

Additionally, the *Thana* court said *Rooker-Feldman* did not apply to the case before it because the plaintiff in the federal suit had filed an independent, concurrent action that challenged the actions of one of the parties to the state court suit, but sought damages unavailable there. Similarly, although Nasser is clearly challenging the state court's actions (and the actions of the other party and its attorney in the State Lawsuit), he has attempted to assert

independent claims under 42 U.S.C. §§ 1983 and 1985. So, the court concludes that *Rooker-Feldman* does not deprive this court of jurisdiction over the case.[8]

**B. Rule 12(b)(6) Motion to Dismiss by Neustar and Waller**

Neustar and Waller seek dismissal under Rule 12(b)(6), as well. In response, Nasser reiterates the same factual allegations as set forth in his complaint. He insists that there was no demurrer to paragraphs one through forty of the complaint, that Judge Athey ruled on undisputed material facts, and that he subsequently entered a valid "Final Order" that granted Nasser judgment in his favor. He challenges everything that happened thereafter as part of a conspiracy and a fraud on both the state court and this court. (*See generally* Pl.'s Mot. Summ. J.)

When ruling on a motion to dismiss, the court must accept all well-pled facts as true, but it need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Applying this standard here, the court concludes that Nasser's claims against Neustar and Waller are subject to dismissal on a number of grounds.

First of all, Nasser does not plausibly identify the deprivation of any right, let alone any violation of a federal right. Relatedly, to the extent he is claiming a violation of his federal due process rights, he has failed to state a violation of either his procedural or substantive due process rights. Second, he has failed to allege facts supporting a plausible conspiracy. Third, Waller and Neustar are not state actors and the inadequately pled conspiracy cannot render them

[8] The court recognizes that the issues sought to be litigated might still be precluded under doctrines of *res judicata* or other preclusive principles, especially now that the State Lawsuit has concluded. In light of the court's determination that Nasser's claims are subject to dismissal under Rule 12(b)(6), however, it need not reach these other issues.

state actors for purposes of § 1983. Fourth, the complaint's counts asserting violations of rules of professional conduct are subject to dismissal because there is no private right of action for such violations. The court discusses each of these grounds for dismissal briefly.

In order to allege a violation of section 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)). Even if the state court had misapplied Virginia law or its rules of civil procedure, that would not give rise to a cause of action under § 1983, which protects against the deprivation of *federal* constitutional and statutory rights. And, as the court has already discussed, the proceedings in the State Lawsuit do not reveal that Nasser was deprived of any rights, let alone a federal right.

Further, although it appears that Nasser is alleging a violation of his federal due process rights, he has not stated facts that give rise to a plausible due process violation. A due process violation can be either procedural or substantive. To establish a procedural due process violation, a plaintiff must show that he was deprived of notice of a proceeding or the opportunity to be heard. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Nasser was the plaintiff in the State Lawsuit, he was permitted to participate fully in that lawsuit, and he does not deny that he was given notice of every hearing, including the trial. He elected not to appear for that trial based on his incorrect belief that the state court had been deprived of jurisdiction, but he does not allege he was deprived of the opportunity to appear. So, he has not adequately alleged a procedural due process violation.

His substantive due process claim is equally infirm. In addition to requiring state action—which, as the court discusses below, he cannot establish as against Waller or Neustar—a due process claim also requires a showing that the defendant's action was "intended to injure [the plaintiff] in some way unjustifiable by any government interest." *Waybright v. Frederick Cnty., Md.*, 528 F.3d 199, 205 (4th Cir. 2008) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). As the Fourth Circuit has explained:

> "The touchstone of due process is protection of the individual against arbitrary action of the government." *County of Sacramento v. Lewis,* 523 U.S. 833, 845, 118 S. Ct. 1708, 140 L.E.2d 1043 (1998). Only "the most egregious official conduct" qualifies as constitutionally arbitrary. *Huggins v. Prince George's Cnty., Md.,* 683 F.3d 525, 535 (4th Cir. 2012) (quoting *Lewis,* 523 U.S. at 846, 118 S. Ct. 1708). To give rise to a substantive due process violation, the arbitrary action must be "unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Rucker v. Harford Cnty.,* 946 F.2d 278, 281 (4th Cir.1991).

*Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 150 (4th Cir. 2014). Arbitrary action in the constitutional sense, then, requires a showing that the defendants acted in a manner that "shocks the conscience." *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317, 321 (4th Cir. 2012). "Defining conduct that shocks the conscience does not draw on any traditional standard of liability from tort law but rather refers, as a constitutional construct of substantive due process, to 'conduct intended to injure in some way unjustifiable by any government interest.'" *Id.* (citations omitted). Although Nasser makes blanket assertions of misconduct and conspiracy, he has not stated plausible facts alleging conduct by defendants that is sufficient to "shock the conscience." Furthermore, Nasser had available to him adequate post-deprivation state court remedies to rectify any deprivation through the State Lawsuit, most

notably an appeal that he did not pursue. For all of these reasons, he has failed to state a substantive due process claim.

Nasser's allegations in support of his conspiracy claim are also insufficient. In order to state a conspiracy claim under 42 U.S.C. § 1985, Nasser must allege:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Thomas*, 841 F.3d at 637. To survive a motion to dismiss, a plaintiff must allege specific facts from which a conspiracy may plausibly be inferred; it is not enough merely to allege "parallel conduct and a bare assertion of conspiracy." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007); *see also Thomas*, 841 F.3d at 637 (quoting same and affirming dismissal of conspiracy claim).

Nasser's complaint fails to satisfy this standard. It contains a bare assertion of conspiracy, to be sure, but the facts offered in support are insufficient. He alleges nothing more than that a party and its counsel requested certain relief from the court in the course of a lawsuit, through both written submissions and at public hearings, and the judge ruled in the party's favor. That does not come close to stating plausible allegations of conspiracy. Instead, the facts as alleged show a judge making non-surprising and fairly customary rulings in the course of a lawsuit. Nor do Nasser's allegations concerning the names of the defendant supposedly being "altered," or the docket reflecting more than one trial date, support a plausible inference that the

defendants conspired against him.[9] Those are simply administrative aspects of case management that are typical for courts; they do not suggest to the court any improper conduct on the part of any of the defendants.

Nasser's claims against Waller and Neustar are also subject to dismissal because these two defendants are not state actors and did not act under color of state law. Just as in *Thomas*, "[w]ithout state action, [the plaintiff] has no § 1983 claim." *Id.* at 637. To the extent Nasser relies on the alleged conspiracy with the state judge to establish state action, his reliance is misplaced. As already discussed, there is nothing in the facts as alleged by Nasser that suggests to the court any plausible conspiracy between Waller, Neustar, and Judge Bryant.

Furthermore, in the absence of any conspiracy between Bryant and the other defendants, plaintiff's federal conspiracy claim against Waller and Neustar fails for the additional reason that Waller was acting as Neustar's agent at all relevant times, and an agent and his principal cannot legally conspire. *See, e.g.*, *Rogers v. Deans*, 992 F. Supp. 2d 621, 633 (E.D. Va. 2014) (accountant and ex-husband could not conspire because of their agency relationship; legally, a principal and agent are the same entity, and an entity cannot conspire with itself); *Fox v. Deese*, 362 S.E.2d 699, 708 (Va. 1987) ("a single entity cannot conspire with itself").

---

[9] For example, Nasser contends that the defendants were inconsistent in their use of the defendant's name, suggesting that both the inconsistency and the "creation" of two defendants identified in the case docket were part of a scheme "to justify two different proceedings both rendering 'Final Orders.'" (Pl.'s Mot. Summ. J. 6–10). He also claims that the conspirators "added a mysterious 'Jury Trial' to the records on June 14, 2015, (with no results) while Judge Athey still had jurisdiction, to cause further confusion." (*Id.* at 10–11; *see also* Pl's Mot. in Opp'n to Waller & Neustar's Mot. to Dismiss 19–20, Dkt. No. 20 (arguing that the defendants violated 18 U.S.C. § 1512, which makes it a crime to alter, destroy, mutilate or conceal a record or document with the intent to impair the object's integrity or availability for use in an official proceeding); Pl.'s Opp'n to Bryant's Mot. Dismiss 7, Dkt. No. 22 (arguing that because the case was "tried" on March 4, 2015, any docket entry reflecting another trial date of June 13, 2016 constitutes an alteration of the official records, "a presumed felony").) The court is not entirely clear as to why Nasser thinks these particular changes were in furtherance of the alleged conspiracy, but none of the instances of alleged fabrication that he points to appear out of the ordinary, especially since the defendant went by several names during the course of the State Lawsuit and any proceeding in March 2015 was not a trial, but simply a hearing on demurrer. Significantly, moreover, Nasser does not allege or explain how those alleged fabrications harmed him.

Finally, all of Nasser's claims premised on violations of ethical rules are subject to dismissal because a violation of a rule of professional conduct (and similarly, a judicial canon of conduct) does not give rise to a private cause of action. Va. Sup. Ct. R. Pt. 6, § II, Preamble ("Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. . . . [The Rules] are not designed to be a basis for civil liability."); *Schatz v. Rosenberg*, 943 F.2d 485, 492 (4th Cir. 1991) (rejecting argument that Maryland Code of Professional Responsibility could establish a legal duty to third parties and explaining that "courts have consistently refused to use ethical codes to define standards of civil liability for lawyers. . . . The ethical rules were intended . . . to regulate the conduct of the profession, not to create actionable duties in favor of third parties"); *Star Broad. Inc. v. Reed Smith Ltd. Liability P'ship*, 2009 WL 482833, at *10 (E.D. Va. Feb. 24, 2009) (citing to the preamble to the rules in holding that a violation of the rules of professional conduct could not establish a claim of legal malpractice); *Great-West Life & Annuity Ins. Co. v. Bullock*, 202 F. Supp. 2d 461, 465 (E.D.N.C. 2002) (same as to violations of North Carolina Rules of Professional Responsibility).

Nasser claims, though, that he is not a "third party" barred from having a cause of action, but a litigant to the State Lawsuit. Nasser plainly misunderstands the law on this issue. He is a "third party" in that he is not a party to the attorney-client relationship. *See, e.g.*, *Schatz*, 943 F.2d at 492 (rejecting claims of non-client against an attorney as non-client was a "third party"). His claims premised on these ethical violations fail to state a claim for civil liability.

## C. Judge Bryant's Motion to Dismiss

Judge Bryant's motion to dismiss contains a number of grounds for dismissal, as well. The first is that the *Rooker-Feldman* doctrine bars the claims here—a claim the court has already addressed and rejected. His other asserted grounds for dismissal are meritorious.

First, as he notes and as Nasser does not challenge, all claims for monetary damages against him in his official capacity are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 165–67 & n.14 (1985) (suit for damages against state officer in his official capacity is barred by the Eleventh Amendment).

Also, absolute judicial immunity applies to the claims against Judge Bryant and bars all claims for monetary relief and any claim for injunctive relief under 42 U.S.C. § 1983. *Lepelletier v. Tran*, 633 F. App'x 126, 127 (4th Cir. 2016) (per curiam) (holding that the plaintiff's "claims seeking injunctive relief against a sitting state court judge for actions taken in his judicial capacity . . . were barred by the plain language of 42 U.S.C. § 1983"); *Malave v. Abrams*, 547 F. App'x 346, 347 (4th Cir. 2013) (acknowledging prior authority that judicial immunity did not apply to claims for injunctive relief, but noting that Section 1983 was amended in 1996 to provide that "injunctive relief [against a judicial officer] shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable"). Nasser has not alleged, let alone shown, that declaratory relief was sought, violated, or unavailable. Thus, if Judge Bryant has judicial immunity, it bars the entirety of the claims here.

There are two possible exceptions to judicial immunity. Specifically, it does not shield a judge for (1) non-judicial acts; or (2) acts taken in the clear absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). Neither exception applies here. As to the first, the actions Judge Bryant took that Nasser challenges were all judicial acts, so that exception does not apply.

Judge Bryant made rulings that Nasser did not like (such as allowing Neustar's answer to be filed out of time, entering judgment in favor of Neustar, and imposing sanctions), and he held hearings in the case, in which he tried to explain to Nasser why Nasser had to try this case and had not obtained either a judgment in his favor or a default judgment. These are clearly judicial acts because each of the alleged acts by Judge Bryant was "a function normally performed by a judge" and the parties "dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12 (citing *Stump v. Sparkman*, 435 U.S. 349, 360 (1978) as identifying these two factors used to determine whether an act is a "judicial one" and concluding that a judge's alleged direction to the police to bring an attorney in the pending case before him and to use excessive force in doing so was a "judicial act," despite it being in excess of his authority).

Nasser asserts that the second exception is applicable, claiming repeatedly that Judge Bryant was "without jurisdiction" to act and thus acted outside his judicial capacity. (*See, e.g.*, Pl.'s Opp'n to Neustar & Waller's Mot. Dismiss 10.) But again, this argument is based on his incorrect assertion that the Demurrer Order was a final judgment and thus that the state court was deprived of jurisdiction over the case when the judgment was not appealed and the time for doing so had passed. As already discussed, however, that is simply not the case. Furthermore, even if Nasser had a colorable argument that jurisdiction may have been lacking, judicial immunity is unavailable only if jurisdiction was clearly absent, not merely if the judge acted in excess of his jurisdiction. *King v. Myers*, 973 F.2d 354, 356–57 (4th Cir. 1992).

Finally, the court notes that the vague allegations of a conspiracy here do not erode the judicial immunity to which Judge Bryant is entitled. *See Dennis v. Sparks*, 449 U.S. 24, 27–29 (1980). The *Dennis* Court explained that a judge's judicial immunity is not overcome by allegations that the judge conspired with others to do an allegedly unlawful act, so long as that

particular act is within his judicial powers. *Id.* In short, the complaint's allegations, which are effectively that an attorney filed motions and the judge ruled on it in the party's favor, does not reflect a conspiracy; it reflects typical judicial motions' practice.

Moreover, Nasser's claims against Judge Bryant also are subject to dismissal for reasons similar to the dismissal of the claims against Waller and Neustar. Nasser has not pleaded conspiracy with the particularity required, has not plausibly alleged a violation of a federal right or a violation of due process, and he may not bring a cause of action based on a judge's violation of an ethical rule. For the foregoing reasons, Judge Bryant's motion to dismiss will be granted.

**D. Motions for Summary Judgment**

Given the court's granting of defendants' motions to dismiss, the court concludes that it is unnecessary to address the motions for summary judgment and will therefore deny them as moot.

## III. CONCLUSION

For the foregoing reasons, the defendants' respective motions to dismiss (Dkt. Nos. 7, 12) will be GRANTED, and both pending motions for summary judgment (Dkt. Nos. 19, 27) will be DENIED AS MOOT. An appropriate order will be entered.

Entered: March 7, 2017.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge